```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ILLINOIS
                        EASTERN DIVISION


Nicole Coggin,                    )
                                  )
          Plaintiff,              )
                                  )
                                  )
     v.                           )    No. 22 C 6775
                                  )
                                  )
Medline Industries, Inc.,         )
                                  )
          Defendant.              )
```

Memorandum Opinion and Order

In the midst of the Covid-19 pandemic, Medline Industries, Inc. imposed a vaccination requirement on certain employees. Nicole Coggin sought an exemption from this requirement because of a medical condition. When Medline denied her request and, consistent with their announced policy, terminated her employment, Coggin sued Medline under the Americans with Disabilities Act ("ADA"). Medline now moves for summary judgment, which is granted for the reasons below.

I.

At this stage, I take the facts in the light most favorable to Coggin so long as they are supported by the record. *See Coleman v. Donahoe*, 667 F.3d 835, 842 (7th Cir. 2012).

Medline manufactures and distributes medical products and provides related services including education and clinical

programs to medical organizations and facilities both nationally and globally. Coggin began her employment with Medline in 1996 as a Post-Acute Care Sales Representative, a position she maintained until her termination. In that role, Coggin sold medical products to customers including nursing homes, assisted living facilities, memory care facilities, home health hospice, respiratory companies, and durable medical equipment retail stores in the vicinity of Sarasota, Florida. Prior to the Covid-19 pandemic, Coggin spent about 90% her work time in nursing home settings, where she met with various individuals including central supply personnel, directors and assistant directors of nursing, facility administrators, dietary personnel, physical therapy personnel, and nursing assistants.

Beginning in March 2020 due to the Covid-19 pandemic, Medline required all employees who were able to do so, including Coggin, to work from home. Nonetheless, Coggin continued to visit certain facilities in-person, subject to each facility's requirements.

With the advent of Covid-19 vaccines, Medline announced on August 20, 2021, that it would require vaccination for all customer-facing employees in the field sales, marketing, quality, and product divisions, including Coggin, beginning on November 1, 2021. Coggin contends, however, that the requirement did not in reality extend to all customer-facing employees and she singles out delivery drivers in particular, who she claims had regular and

2

frequent customer contact. The new policy further required any customer-facing employee who was unvaccinated or not fully vaccinated on August 20, 2021, to temporarily transition to remote work until they either complied with the policy or were terminated after the November deadline.

Medline claims it established an interactive process to accommodate those who sought exemptions from the vaccination requirement. Coggin disputes that the process was truly interactive but acknowledges that Medline supplied a form for employees to complete and return to the Human Resources department, and that upon denial of an exemption request Medline informed employees that they could apply for open non-customer-facing positions.

Coggin submitted a request for a medical accommodation on September 16, 2021. Dr. Sheri Weinstein completed the portion of the form reserved for healthcare providers, and she checked the boxes indicating that Coggin had a permanent physical or mental impairment that prevented her from receiving the Covid-19 vaccine. Though the specific impairment is not mentioned on the form, all agree that it is idiopathic thrombocytopenia purpura ("ITP").[1] In lieu of receiving the vaccine, Dr. Weinstein recommended that

---

[1] ITP, according to the parties' submitted facts, is a disorder that causes an individual's immune system to attack her platelets, which can lead to low platelet counts and trouble with blood clotting.

Coggin test if she had Covid-19 symptoms and, if the test was positive, quarantine and notify her supervisors. For her part, Coggin would have preferred to abide by the requirements of individual customers, most of whom she contends did not require her to be vaccinated against Covid-19.

Human Resources Senior Director Christina Burke met with Coggin to discuss her request. Later, Burke met with Coggin's supervisor, Joshua Paul, to discuss the requirements of a salesperson's job. On October 15, 2021, Burke called Coggin to tell her that Medline could not accommodate her exemption request. Burke followed up with Coggin later that day by email, writing that the reason for the denial was "the nature of [Coggin's] customer-facing role including changing policies throughout healthcare facilities, ongoing interactions with all facets of customers throughout patient care settings and workplace settings in addition to collaboration and interactions with variety [sic] of Medline employees." Exh. 13 to Coggin Dep., ECF 39-2 at 301–02. The email further indicated Coggin had until November 1, 2021, to receive her first dose of the Covid-19 vaccine and until December 3, 2021, to be fully vaccinated.

In the event Coggin did not intend to comply with the vaccination requirement, she was instructed to notify Burke or Paul by October 22, 2021, in which case she may be eligible for non-customer-facing positions at Medline. Coggin maintains that

4

she asked Burke about non-customer-facing positions, but that Burke did not elaborate on where to find them. When Coggin searched Medline's website herself, the only available jobs she found were to be a delivery driver.

In the end, Coggin notified Burke that she would not get vaccinated because of her ITP, so Medline fired her. Coggin filed a charge of discrimination with the Equal Employment Opportunity Commission, and later initiated this suit.

## II.

Coggin brings three claims under the ADA: failure to accommodate, disparate treatment, and a perceived or "regarded as" disability discrimination claim.[2] Each claim is premised on violation of 42 U.S.C. § 12112, which prohibits employers from discriminating against employees "on the basis of disability."

## A.

To succeed on her failure to accommodate claim, Coggin must demonstrate: (1) she is a qualified individual with a disability; (2) Medline was aware of her disability; and (3) Medline failed to reasonably accommodate her disability. *James v. Hyatt Regency Chi.*, 707 F.3d 775, 782 (7th Cir. 2013). For present purposes, I will assume Coggin could prevail on the first two elements, though Medline argues she cannot. Because Coggin's preferred

---

[2] Coggin also brought a claim for disparate impact, but she withdrew that claim in response to Medline's motion for summary judgment.

accommodation would have imposed an undue hardship on Medline and because Coggin declined Medline's alternative offer, her failure to accommodate claim may not proceed.

Coggin argues that she should have been allowed to continue in her role as a Post-Acute Care Sales Representative unvaccinated, and that she be accommodated by following the testing and masking requirements of each individual customer. For the allegedly few customers who required her to be vaccinated, Coggin contends Medline could have simply sent someone else in her place. Medline, for its part, maintains that this proposed arrangement would cause it undue hardship in the form of, among other things, increased health risks to the patients and staff at its customers' facilities. I agree.

An employer need not implement a proposed accommodation if that accommodation would cause "undue hardship in the particular circumstances." *EEOC v. United Airlines, Inc.*, 693 F.3d 760, 762–63 (7th Cir. 2012) (quoting *US Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002)). Here, Coggin does not dispute certain baseline facts about the threats posed by Covid-19, which Medline supports with the report of its expert, Dr. Arthur Reingold.[3] These facts

---

[3] In her response to Medline's statement of material facts, Coggin does not dispute these facts, but claims they are immaterial and seeks to strike the testimony of Dr. Reingold because Dr. Reingold has no personal knowledge of Coggin. It is procedurally improper to seek to strike expert testimony in response to a statement of facts. And at any rate, Dr. Reingold does not need personal

include that nursing home residents and patients in other types of healthcare facilities, who are often elderly and have underlying conditions, faced some of the greatest health risks from Covid-19 infection in 2021; that healthcare workers faced significant risks from Covid-19 that year; that those present in hospital settings infected with Covid-19 could transmit the virus to others in the facility; and that masking and regular testing alone are less effective than employing those measures in conjunction with vaccination. Pl. Resp. to Def.'s L.R. 56.1 Stmt., ECF 46 ¶¶ 63–66. Nor does Coggin dispute that unvaccinated individuals posed a greater risk to themselves and others than those who were vaccinated. *Id.* ¶¶ 67–68. Coggin further admits that, prior to the pandemic, she spent 90% of her time in nursing home settings. *Id.* ¶ 6.

The ADA did not require Medline to expose its customers' patients and staff to these risks, nor did it require Medline to put its reputation on the line by doing so. *Cf. Stern v. St. Anthony's Health Ctr.*, 788 F.3d 276, 295 (7th Cir. 2015) ("The ADA does not require an employer to walk 'on a razor's edge--in jeopardy of violating the [ADA] if it fired such an employee, yet

---

knowledge of Coggin to opine as an expert. *See* Fed. R. Evid. 702. These opinions are about the risks posed by Covid-19 in healthcare settings, and particularly those posed by unvaccinated individuals. Coggin has not made a showing sufficient to exclude them.

in jeopardy of being deemed negligent if it retained him and he hurt someone.'" (quoting *Palmer v. Cir. Ct. of Cook County*, 117 F.3d 351, 352 (7th Cir. 1997))). Medline was therefore justified in rejecting Coggin's proposed accommodation to continue working in her role unvaccinated.[4]

Coggin argues that Medline's failure to implement a vaccination requirement for its delivery drivers belies its claim of undue hardship in exempting her from the requirement. In her view, drivers were customer-facing because they regularly delivered supplies to healthcare facilities and entered those facilities in the process.[5] The record does not bear this out, however. Delivery drivers apparently entered customer facilities on occasion, but typically only the loading dock, where they interacted with facility staff assigned to receive deliveries.

---

[4] In *Together Employees v. Mass General Brigham, Inc.*, 573 F. Supp. 3d 412 (D. Mass. 2021), *aff'd*, 32 F.4th 82 (1st Cir. 2022), a district court similarly concluded that it would impose an undue hardship on the hospital-employer to exempt patient-facing employees from a Covid-19 vaccination requirement. *See id.* at 435 (employer allowed to consider "indirect [costs] related to health and safety"). Though the posture of that ruling--on a motion for preliminary injunction--differs from the one here, the reasoning is the same: the ADA does not require the employer in *Together Employees* or the one here to offer vaccine exemptions that would threaten the health of vulnerable patient populations.

[5] Coggin repeatedly characterizes all the drivers as unvaccinated but submits no evidence about the vaccination status of any driver. What is supported by the record is that delivery drivers were not subject to Medline's vaccination requirement, regardless of whether some drivers chose to get vaccinated.

That is the extent to which the record reveals drivers' activities at the facilities; Coggin has not pointed to evidence regarding how frequently drivers entered facilities or whether they ever interacted with vulnerable patients or those who had contact with those patients. Medline permissibly concluded that this brief contact with a limited set of individuals presented an acceptable level of risk, while the extended interactions Coggin had with various individuals--including those interacting directly with vulnerable patients--did not. Coggin resists the notion that contact between drivers and customer staff was brief and limited to the loading dock by pointing to testimony that drivers were credentialed to enter certain facilities. But she supplies nothing to show that being credentialed meant they ventured beyond loading docks or that they interacted with a broader swath of staff at the facilities, and it would be too far a stretch to infer as much.

Also unavailing is Coggin's argument that Medline's proposal that she work in non-customer-facing roles undercuts its assertion of undue hardship because in those roles, Coggin would still interact with other Medline personnel and could expose them to Covid-19. But Medline was allowed, consistent with the ADA, to accept some risk of infection to limited groups of its own workers while declining to broadly impose that risk on especially vulnerable populations across various healthcare facilities.

9

Coggin's failure to accommodate claim independently fails because Medline offered her a reasonable accommodation and she declined it. When Medline denied Coggin's exemption request, it told her she "may be eligible for other non-customer facing positions for which a vaccine is not required at this time." Exh. 13 to Coggin Dep., ECF 39-2 at 302. She did not apply to any of those positions.

Coggin complains that this was not an offer to transfer to a different position, but instead left her to apply for open positions like any member of the public. In support, she points to the testimony of Medline Human Resources executive Katie Halberg that "[w]e gave the employees an opportunity to look at all of the jobs that were non customer-facing." Halberg Dep., ECF 39-8 at 46:11-13. A jury would not be able to tell from this testimony whether Coggin would have had to compete on the same playing field as the general public for these roles, especially because she never asked and never applied.

Coggin testified that, even though she did not think it a reasonable accommodation, she attempted to pursue this option by looking on "the Medline website" for non-customer-facing positions, but that she found only truck driver positions. Coggin Dep., ECF 39-2 at 74:14-75:4. When asked whether she reached out to Burke for assistance in looking for such roles, the following exchange took place:

10

Q. Did you reach out to Christina Burke at all for assistance on looking for noncustomer-facing jobs?

A. When I was in conversation with her, I would ask her what we're supposed to do, but there was no opportunities that I was made aware of.

Q. What did she say when you asked her about, Hey, what do I do to look into these?

A. They didn't elaborate, she didn't elaborate at all, that's why I started looking on their--on their platform myself, but that there was no opportunities other than being a truck driver.

Q. Christina didn't point you in the direction of any resources?

A. Not that I'm aware of, no. Maybe she did say something about the website, but I already knew about it because I had been there for so long.

*Id.* at 75:5-21.

While true that Medline had a duty to engage in an interactive process to seek out a reasonable accommodation for qualified, disabled individuals, *see Lawler v. Peoria Sch. Dist. No. 150*, 837 F.3d 779, 786 (7th Cir. 2016), Coggin's evidence is insufficient for a jury to find that Medline did not do so here. Medline, through Burke, communicated to Coggin that she may be eligible for other roles. From there, it was incumbent on Coggin to seek out information on what those roles might be. *See id.* at 786 (duty to engage in interactive process in good faith applies to both employer and employee). Coggin does not assert that she specifically did so by, for example, asking where to look for open positions, but instead vaguely accuses Burke of failing to

11

elaborate or identify positions from the start. But her testimony is too thin on this point.

In any event, even if Medline failed to adequately engage by identifying open, non-customer-facing jobs, it would not make a difference because "even when the employer fails to adequately interact, a plaintiff must come forward with non-speculative evidence 'show[ing] that a reasonable accommodation could be made that would enable her to carry out the essential functions of her job.'" *Stern*, 788 F.3d at 295 (quoting *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1062 (7th Cir. 2014); additional citations omitted). She has not done so since, in her view, none of the other available positions--either the driver positions she claims to have found or the other ones identified during discovery, *see* ECF 44-3 (listing those positions)--were acceptable because they would have required her to travel too far, or would have reduced her hours, pay, and benefits. Under the ADA, an employer is only required to offer jobs that are available, not to create new ones. *See McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1165 (7th Cir. 1997) ("An employer is not obligated to 'bump' another employee in order to create a vacancy for the disabled employee. And the employer does not have to create a new position for the disabled employee." (citing *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996))). This sometimes means that the only reasonable accommodation would be a demotion, *see Dalton v. Subaru-*

*Isuzu Auto., Inc.*, 141 F.3d 667, 678 (7th Cir. 1998), or that there unfortunately is no available accommodation acceptable to the employee at all, *see Gratzl v. Off. of Chief Judges of 12th, 18th, 19th & 22nd Jud. Cirs.*, 601 F.3d 674, 680 (7th Cir. 2010) (plaintiff failed to cite to any reasonable accommodation so her ADA claim failed).

B.

An employer may also run afoul of the ADA through disparate treatment of an employee on the basis of a disability. To succeed on her disparate treatment claim, Coggin must show: (1) she was disabled; (2) she was qualified to perform the essential functions of her job with or without reasonable accommodation; and (3) disability was the "but for" cause of her termination. *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019). The parties reference the "direct" and "indirect" methods of proving a disparate treatment claim, and while these remain viable frameworks, the Seventh Circuit has "tried to move away from the many multifactored tests in employment discrimination cases." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017). At bottom, the question is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [disability] caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Coggin's claim fails on the causation element. She maintains there is sufficient circumstantial evidence of causation, which may include "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Monroe*, 871 F.3d at 504 (quoting *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 684 (7th Cir. 2014)).

Coggin's evidence of suspicious timing is that she was terminated five weeks after she submitted her vaccine exemption request and two weeks after Medline denied that request. "Suspicious timing alone rarely establishes causation," *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 898 (7th Cir. 2015), particularly where "a significant intervening event separate[es] [an employee's protected activity] from [her] discharge," *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 675 (7th Cir. 2011) (citation omitted). Here, between the time Medline learned of Coggin's disability--which, viewing the facts most favorably to Coggin, is when she submitted her exemption request--and her termination, Coggin refused to comply with the vaccination requirement. Thus, without additional corroborating evidence,

14

timing alone cannot advance Coggin's case past summary judgment. And the timing here was not particularly suspicious.

Coggin also says that Medline forced disabled employees to stop traveling and servicing their customers the way their customers required, which could be evidence that Medline treated disabled employees differently than non-disabled ones. That assertion is unsupported by the evidence, and moreover it was unvaccinated customer-facing employees, not those with disabilities, who were precluded from entering customer facilities.

Coggin next points to two sets of employees who she claims were similarly situated to her but were treated more favorably: (1) delivery drivers and (2) salespeople who received temporary exemptions from the vaccine requirement because they had recently contracted Covid-19 or were pregnant. Similarly situated individuals must be "directly comparable" to a plaintiff "in all material respects." *Monroe*, 871 F.3d at 507 (citations and internal quotation marks omitted). That generally means the individuals must have "dealt with the same supervisor, were subject to the same standards and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* (quoting *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008)).

Coggin fails to show the delivery drivers were similarly situated. For starters, the drivers had different jobs and different supervisors than Coggin. More importantly, Coggin does not adduce any evidence as to the disability status of any of the drivers. The vaccination requirement was inapplicable to delivery drivers as a whole; it did not, for example, apply only to disabled delivery drivers but not to non-disabled ones. It is critical in identifying a comparator that the comparator be similar in all material respects but that she be outside of the plaintiff's protected group. *See Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011) (relevant comparators are "similarly situated employees without a disability" (citations omitted)). Otherwise, the comparator offers little insight into how the employer treated those within a particular protected class compared to those outside of it. The drivers were therefore not similarly situated to Coggin.

Nor were the salespeople who were granted temporary exemptions due to recent Covid-19 infection or pregnancy. These individuals were not directly comparable to Coggin in all material respects exactly because of their pregnancy or recent infection, which were the bases for their exemptions. Furthermore, Coggin has not offered any evidence of these individuals requesting and receiving a permanent exemption--which is what Coggin wanted--so they are distinguishable from Coggin in that respect as well.

16

Additionally, Medline's legitimate, nondiscriminatory explanation for why it terminated Coggin passes muster. According to Medline, and amply supported by the evidence, Coggin was fired for noncompliance with the vaccination requirement, which applied to disabled and nondisabled salespeople alike. Coggin can defeat this proffered reason by showing that it is pretext for discrimination. "Pretext requires more than showing that the decision was 'mistaken, ill considered or foolish, [and] so long as [the employer] honestly believes those reasons, pretext has not been shown.'" *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005) (quoting *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000)). In Coggin's view, the fact that the vaccination requirement did not extend to delivery drivers demonstrates pretext. But this disparity in the vaccine requirement's applicability does not suggest "a dishonest explanation, a lie rather than an oddity or an error." *Id.* (quoting *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000)). It is readily explained by differences in the work performed by salespeople and drivers, as explored above.

Coggin also points to Burke's explanation in her email denying Coggin's exemption request as evidence of pretext. According to Coggin, Burke stated an exemption was not possible because of ever-changing customer policies despite never having asked any of Coggin's customers about their policies. But Medline could have

17

reasonably been concerned that its customers would change their own policies and that these changes could affect whether Medline could send unvaccinated salespeople to those facilities. What's more, that was only one reason Burke gave in her email. She also explained the denial was the result of "ongoing interactions with all facets of customers through patient care settings," which gave Medline firm ground on which to deny Coggin's request.

As her final attempt to show pretext, Coggin claims that customer-facing salespeople were granted medical-based exemptions while she was not. This apparently refers to those individuals with recent Covid-19 infections and those who were pregnant, but Medline permissibly granted temporary exemptions to those groups of people as explained above. To the extent Coggin claims some of these individuals were given more permanent exemptions, the record evidence she cites does not support that contention.

C.

As with her disparate treatment claim, to prevail on her "regarded as" disability discrimination claim, Coggin must show causation.[6] *See Shell v. Burlington N. Santa Fe Ry. Co.*, 941 F.3d 331, 335 (7th Cir. 2019). The twist here is that, rather than premising her claim on her actual disability (ITP), her theory is

---

[6] Medline argues that Coggin failed to exhaust administrative remedies on this claim because she did not bring it in her EEOC charge, but because the claim fails on the merits I do not examine that argument.

that she was terminated because of a disability Medline perceived her to have. This type of claim is contemplated by the ADA's definition of "disability," which includes "being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1)(C). Paragraph (3), in turn, says that an individual is "being regarded as having such an impairment" when "he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A).

To the extent Coggin's theory is that Medline perceived her to have a medical condition (ITP or otherwise) that prevented her from receiving the Covid-19 vaccine and fired her on that basis, the claim fails for the same reason as her disparate treatment claim: she has not shown that a medical condition, as opposed to her noncompliance with the vaccination requirement, caused her termination. And to the extent the alleged perceived disability Medline imputed to her was her refusal to receive a Covid-19 vaccine, the claim likewise fails. That is because refusal to receive a vaccine is not a "physical or mental impairment," as numerous other courts have found. *See, e.g.*, *DiOrio v. Nat'l Educ. Ass'n*, No. 23-246 WES, 2023 WL 7300080 (D.R.I. Nov. 6, 2023) ("Choosing to not receive the COVID-19 vaccination is not a disability under the ADA."); *Johnson v. Mount Sinai Hosp. Grp.,*

19

*Inc.*, No. 22-CV-2936 (AMD) (JRC), 2023 WL 2163774, at *6 (E.D.N.Y. Feb. 22, 2023) (concluding vaccination status is not a "disability" in the context of a "regarded as" claim); *Speaks v. Health Sys. Mgmt., Inc.*, No. 5:22-CV-00077-KDB-DCK, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022) ("Refusing to get a vaccine required by an employer is not itself an 'impairment' of any sort.").

III.

For the foregoing reasons, Medline's motion for summary judgment is granted.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: September 20, 2024

20